2 U.S. 60
 2 Dall. 60
 1 L.Ed. 289
 Price
v.
Ralston, assignee of Pollard, a Bankrupt
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 
 2 U.S. 60
 2 Dall. 60
 1 L.Ed. 289
 Price
 v.
 Ralston, assignee of Pollard, a Bankrupt
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 This cause came before the Court, on a case stated for their opinion, in the following words: 'On the 23rd day of March, 1784, William Price, the plaintiff, shipped and consigned goods, by the Christian, to William Pollard, the bankrupt, one half for the account of the said William Pollard; and, at the same time, shipped and consigned other goods, by the Prince of Liege, to the said William Pollard, for the same account. And on the 18th day of May, following, the said William Price, shipped and consigned other goods, by the John, to the said William Pollard, for the same account; and on the 2nd day of September, in the same year, shipped and consigned, by the George, to the said William Pollard, other goods, for the same account; and the said William Price, on the 2nd day of December, 1785, shipped and consigned other goods, to Messrs. Robert Duncan, jun. & Co. of Philadelphia, being for and on account of the said William Price. The said Robert Duncan & Company, on receipt of them, deposited the said goods in the hands of the said William Pollard, for account of the said William Price. Considerable sales of the above mentioned goods, were made from time to time, by the said William Pollard, and monies received, for the debts outstanding on account of the said sales; the said Pollard, at different times previous to his becoming a bankrupt, as hereafter mentioned, took from some of the debtors bonds, payable to him, the said William Pollard, and not expressing his capacity of agent for the said Price. A commission of bankruptcy issued, the 28th day of June, 1787, against the said William Pollard, and on the 29th day of June, 1787, he was declared a bankrupt. At the time he was so declared a bankrupt, he had no specie proceeding from the said sales in his possession, separated and distinguished from specie belonging to himself. The commissioners of bankruptcy appointed the said Robert Ralston, assignee. Part of the above several parcels of goods, were sold by the said William Pollard, previous to his bankruptcy; who, also previous to his said bankruptcy, received part of the money for which they were sold; the debts due for others of them were outstanding at said time, and part of each of the said several parcels, at the time of the said bankruptcy, were in the hands of said bankrupt, and were taken possession of by the said Robert Ralston, as assignee, and by him sold.
 Query 1st. Is not William Price entitled to a moiety of the outstanding debts, not reduced to bond, or note, due from the goods shipped as aforesaid, on his, and said William Pollard's account, each one half?
 2nd. Is he not entitled to a moiety of the sales, made by said Robert Ralston, of the said goods, shipped as aforesaid, on said William Price's and William Pollard's account, each one half; which came to the said Robert Ralston's hands, as assignee, and which he has sold since?
 3rd. Is not the said William Price entitled to the whole of the outstanding debts, not reduced to bond or note, due for the goods, shipped to Messrs. Robert Duncan, jun. & Company, and which were deposited with the same William Pollard, and sold by him previous to his bankruptcy?
 4th. Is not the said William Price, entitled to the whole of the monies, proceeding from the sales of said last mentioned goods, which were in William Pollard's hands at the bankruptcy, and which the said Robert Ralston took as assignee and sold?
 5th. Is William Price, or is the assignee of William Pollard, entitled to recover and receive the monies aforesaid, due upon bond payable to William Pollard, without describing him as agent, or attorney, for William Price?'
 Four of the questions being voluntarily yielded to Price's claim, the fifth was argued in favour of the plaintiff, by Rawle, and Todd; and, in favour of the defendant, by Ingersoll, and Coxe. It turned principally on the comparative meaning and construction of the following sections, in the statutes of 21. Fac. 1. 19. and in the act of Pennsylvania, for regulating bankruptcy.
 'And for that, it often falls out, that many persons, before they become bankrupts, do convey their goods to other men, upon good consideration, yet still do keep the same, and are reputed the owners thereof, and dispose of the same, as their own: Sect. XI. Be it enacted, That, if at any time hereafter, any person, or persons, shall become bankrupt, and at such time as they shall so become bankrupt, shall, by the consent and permission of the true owner and proprietary, have in their possession, order and disposition, any goods or chattels, whereof they shall be reputed owners, and take upon them the sale, alienation, or disposition, as owners, that in every such case, the said commissioners, or the greater part of them, shall have power to sell and dispose the same, to and for the benefit of the creditors, which shall seek relief by the said commission, as fully as any other part of the estate of the bankrupt.' 21 Fac. 1. c. 19. s. 11.
 'And be it further enacted, &c. That, if any persons shall become bankrupt, and, at such time, by consent of the owner, have in their possession and disposition, any goods whereof they shall be reputed owners, and take upon them the sale, or disposition, as owners, the commissioners shall have power to sell the same, for the benefit of the creditors, as fully as any other part of the estate of the bankrupt.' Penn. Laws 2 Vol. Dall. Edit. p. 376. s. 20.
 For the defendant (whose counsel opened the case) two points were made: 1st. That by the bankrupt law of this State, all the property of a bankrupt, whether in possession, or in action, or of which he was reputed owner, at the time of the bankruptcy, vests in the commissioners and assignees. 2ndly. That even if the law, thus stated, might be deemed too general, and not applicable to the case of factors, executors, &c. yet, where the specific lien of the principal, upon goods consigned on his account to a factor, is destroyed by sale, or otherwise, he can only come in for a dividend with the general creditors, upon the bankruptcy of the factor.
 1st. Point. There is a material difference between the analogous clause in the 21 Fac. 1. c. 19. s. 11. and the 20.section of the act of Pennsylvania. 2 Dall. Edit. p. 370. 2 Bl. Com. 485. For, the latter has no preamble to explain and mark its meaning, as the English statute has, and, on the construction of which, all such effects are excepted, from the sale of the bankrupt's goods, as he held in auter droit. Thus 3 Burr. 1369, Lord Mansfield, proceeding doubtless on the ground of the preamble to the statute, says, 'if an executor becomes bankrupt, the commissioners cannot seize the specific effects of his testator; not even in money, which specifically can be distinguished, and ascertained to belong to the testator, and not to the bankrupt himself.' But the meaning of the act of Assembly, unqualified by any introductory explanation, must rest entirely on the words of the section; and those clearly embrace all the property of the bankrupt, of which he was actual, or reputed, owner at the time of his failure.
 2nd. Point. But whatever way that question may be decided, it was urged, that the specific lien of the plaintiff was destroyed by the sale, before Pollard became a bankrupt. Bull. N.P. 43: It is true, that if the goods had remained in specie, the plaintiff's lien would have excluded the claim of the general creditors; 2 Vez. 585. 2 Atk. 623. 1 Atk. 234.; but as they were actually disposed of, the lien was lost; and even the simple contract debt had been extinguished, by taking bonds from the vendee, not in the quality of Price's agent, but in Pollard's own name. If a Factor sells Goods for a principal, he may bring an action in his own name, or the action may be brought in the name of the principal against the vendee. 1 Atk. 248. But when the debt is reduced to a bond, the principle of the case no longer operates; the commercial relation of the parties is at an end, and the action can only be brought in the name of the Obligee. In Geyer versus Smith's Administrator, it was held, that the lien of a creditor upon the Interstate's estate was destroyed by his taking a bond from the Administrator; and that the Obligor's calling himself Administrator, in the bond, was surplusage; since he could be chargeable only in his own right. 1 Dall. Rep. 347. (n.) And in Cummings, versus Lynn, the Court adjudged that the assignment of Cestuy-que-trust, was not a valid assignment, within the act of Assembly. 1 State Laws, Dall. Edit. p 107. 1 Dall. Rep. 444. If a Factor, dies insolvent, the principal has no lien on the money, or effects, in the hands of the Administrator, or Executor; and it would be a devastavit to satisfy his claim in the first instance, if there were debts of a higher nature. 13 Vin. Abr. tit. 'Factor.' 5.
 But an Attorney in fact, or Agent, may release the debt. 1 Dall. Rep. 449. And if he may release the debt in toto, he may in part: Nor if he exceeds, in so doing, his authority, will that impair the rights of an innocent purchaser or relessee, though it will render him personally liable to his principal; as he would be by giving further day of payment, whether the contract, or security, was under seal, or not. Suppose then, Pollard had legally assigned the bonds for a valuable consideration, would the assignees ad infinitum be mere Trustees for Price, though without notice of his claim? Or, independent of any bankruptcy, or assignment, would it have been in the power of the Administrator of the Obligor, to class Pollard's debt merely with the debts of simple contract creditors? To maintain the affirmative of either of these points (which indeed the adverse counsel must endeavor to maintain) will be attended with inextricable embarrassment and mischief. Bankruptcy is equivalent to payment. Cowp. 472. And the assignees of a bankrupt, stand precisely in the shoes of the bankrupt. 1. Atk. 233. But what shall be deemed the rights of the bankrupt would, by the success of the opposite doctrine, become matter of incessant doubt and litigation; and the assignees would, at every step, be entangled in the difficulty of understanding, for whose use his name has been employed.
 For the plaintiffs, it was stated, that Pollard was placed in two situations; in one being half-part owner of certain shipments; and in the other being merely the Factor of shipments, made originally to Robert Duncan & Co. on the sole account of Price, the plaintiff, but delivered over by them to Pollard, on the same account: And it was contended, 1st. That if the joint shipments remained in specie, or, if the goods were sold, but no money paid, or bonds or notes taken for the value, so that the property could be specifically traced, Price was entitled to his moiety: And, 2ndly. That Price was entitled to the whole of the goods, or their proceeds, in the case of the shipments made for his sole use. But considering the subject in the order pursued by the defendant's Counsel,
 On the 1st. point, it was observed, that the resemblance between the statute of James 1st. and the act of Assembly, is so strong, that the latter may almost be said to be a copy of the former. In both, it was obviously the design of the Legislature, to transfer the actual property of the bankrupt, and nothing more, to the general benefit of his creditors; unless, indeed, in the case of a sale made by the bankrupt, and the goods being afterwards allowed to continue in his possession and use. The 20th section of the act, it is true, is not introduced by a preamble, similar to that which is contained in the English statute; but the general preamble to the whole act must be taken as having some relation to all the parts; and that is sufficiently explanatory of the Legislative meaning on the present subject. Though, therefore, the clause is unrestrained in terms, and seems to extend to all the goods in the bankrupt's possession; yet this latitude of expression must be controuled by the decisions on the statute of James; for, there is no material variance between the two laws; and under the statute of James, though the bankrupt is in possession of the goods, if he is only empowed to dispose of them in trust for another, they are not liable to the bankruptcy, either in law or equity. 1 P. Wms. 314. Even at common law, indeed, the Vendor of goods, which still remained in his possession, might give a sufficient title to second Vendee; for, it shall be presumed, as to all other persons, but the parties to the first contract, that, with the possession, he still retains the property. The case of Factors, however, has been excepted from the statute of 21 Jac. 1. contrary to the express words, for the sake of trade and merchandize. 1. Atk. 232. 2 Vez. 585. 1. T. Rep. 619; and the same principle will produce the same consequence, in construing the act of Pennsylvania. The case in 1 Atk. 174. 1 Vez. 365 could not have been saved by the preamble of the statute; but only by the general principle, which is the same here, as in England, of protecting a trust unaccompanied by fraud. Cowp. 232. Goods left to sell with one, who sells on commission, are not within the statute. Bull. N. P. 262. The trust of Factors is definite; their powers are limited: As for instance, they cannot pledge the goods of their principal for their own debts. 2 Stra. 1178. And such great injustice would be the result of the opposite doctrine in the case of bankruptcy, that the court will not, without absolute necessity sustain it.
 
 
 1
 On the 2nd point, it was said, that the doctrine of extinguishment was irrelevant; for, it could not be doubted that if a bond was taken in discharge of a precedent debt, no suit could afterwards be maintained on the original simple contract; and the only question is, whether the property of the principal can be sufficiently distinguished, from the property of the bankrupt, to entitle him to the benefit of a lien upon his own goods. If it can be so distinguished, even money shall be delivered to him. 1 Atk. 172. However, there is no claim made by Price, when the whole money was received before Pollard's bankruptcy; but if a factor having sold goods of his principal on credit, either by way of book debt, or for notes, afterwards becomes bankrupt, and his assignees receive the price of the goods, or the amount of the notes, it shall be for the use of the principal. 1 Salk. 160. 1 Vez. 363. There is no reason to discriminate between the case of credit given generally, or upon a note; and credit given upon a bond. In numerous instances there may exist such a lien upon cases in action, as will constitute the receiver of them a mere trustee. 1 Vez. 363. 1 Atk. 234. 2 Vez. 586. 674. And such things as a bankrupt holds as trustee will not pass under the commission. 1 T. Rep. 619. The principal has a controuling power over the debts due upon the contract of his factor; Bull. N. P. 130. And as long as the debts are not paid, they may be traced, distinguished, and ascertained in favour of his lien. Thus, where a factor took an obligation in his own name for the price of goods entrusted to him to sell, and afterwards died, the transaction was traced to its source, and the claim of the constituent, who owned the goods, was preferred to the claim of the obligee administrator. 2. Ld. Kaim. P. E. 19. 2. Vern. 638. 13 Vin. 5. 1 Atk. 245. 248. In the case of M'Carty, surviving partner of Cummings versus Nixon, the same point was adjudged in the Supreme court after considerable discussion and deliberation.* The principle as to the administrator of an intestate, applies, with equal force, against the assignees of a bankrupt; who can only claim in the same manner, that the bankrupt might have claimed. Price might have used Pollard's name to recover upon the bonds before the bankruptcy; and, if his property can be fairly ascertained, he may do so still. It is true, that where a man purchases without notice of a trust, his purchase shall be held discharged from it: but the Supreme Court has decided in M'Cullough versus Houston, that notes or bonds are taken by the assignee subject to the same equity, as the assignor. 1. Dall. Rep. And, although there is no court of chancery in Pennsylvania, equity makes a part of the law or the State, according to which the judges will decide, in order to prevent a failure of justice. 1. Dall. Rep. 213, 214.
 
 
 2
 The court having held the cause for sometime under advisement, the President delivered their opinion as follows.
 
 
 3
 Shippen, President.
 
 
 4
 The four questions, first in the order of statement in the case submitted to the opinion of the court, having been candidly given up by the counsel for the defendant, it only remains to consider the fifth point; which involves an enquiry, whether by the bankrupt's selling the goods as the plaintiff's factor, but taking a bond for the money in his own name, the nature of the original demand is not so altered, that it shall attach to the general mass of the bankrupt's property, and be held by his assignees in exclusion of the plaintiff's claim? In other words, whether the plaintiff retains such a legal or equitable right to the bond, or to the money arising from it, as will enable him to maintain an action against the assignees, if they have received the amount?
 
 
 5
 The Legislature in adopting, not only the general spirit, but frequently the very words of the bankrupt law of England, have wisely saved the expence and trouble of settling many questions, which might otherwise, have occurred for litigation, on the introduction of a new and intricate system. Of this description is the clause now in question. The general words, that 'if any person at such time as he shall become bankrupt, shall by the consent of the true owner have in his possession any goods whereof he shall be reputed owner, the commissioners shall have power to sell the same in like manner as any other part of the bankrupt's estate,' are transcribed from the statute of the 21. Ja. 1. c. 19; and have received, in England, an ascertained construction highly favorable to commerce. The goods meant by the statute, are there judicially interpreted to be such goods, as the party to whom they really belong, suffers the trader to sell as his own; and not such as the trader has a bare authority to sell, in the character of a factor, for the use of the principal, who employs him. The same construction must prevail here, for the enacting words are the same; and although the section of one law is not preceded by a preamble, it is certain, that many of the decisions in the courts of Westminster are made without adverting to the preamble, which precedes the analagous section in the statute of James.
 
 
 6
 The argument, however, which has been chiefly relied on by the defendant's counsel, is, that by taking a bond for the debt of the principal, the factor has rendered the property his own, and is merely answerable personally to his constituent. But on this point, likewise, we entertain not the least doubt. Whereever the property of the principal can be specifically distinguished from the property of the factor, it has been uniformly determined, that the right of the former shall prevail over the possession of the latter. If, indeed, a factor sells the goods consigned to him, receives the money due upon the sales, and mixes it, indiscriminately, with his own cash, there cannot, from the nature of the thing, be any subsequent distinguishment, any specific appropriation of property. But if the factor sells on credit, and does not afterwards actually receive the money; or if, having received the money, he vests the amount in other effects for the use of the principal; or if, upon the sale, he takes notes in his own name, for the price of the goods; in all these instances, the property of the principal is clearly separated from the factor's; and being thus distinguished, and distinguishable, it must upon the principles of law and equity be appropriated, upon the factor's bankruptcy, to the individual use of the principal; it cannot be applied by the commissioners to the benefit of the general creditors.
 
 
 7
 But, it has likewise been contended, that the factor's taking abond, may be distinguished from the case of taking a note; as the bond extinguishes the simple contract debt, but the note does not. The extinguishment of a book debt, by receiving a security of a higher nature, may vary the mode of recovery, but cannot alter the right. The money due upon the bond, is still the money of the principal; and he has an unquestionable right to employ the name of the obligee in an action to recover it. If, indeed, in the case of negociable notes (which are to many purposes considered as money) the sum due upon them, shall still be deemed to be the property of the principal; there seems a stronger reason, that the rule shall operate in the case of bonds, which, even in Pennsylvania, are instruments of a less negociable nature than notes.
 
 
 8
 Upon the whole, we are of opinion, that the law is clearly in favor of the plaintiff.
 
 
 
 *
 In the case of M'Cartey, surviving partner versus Nixon, it appeared that the plaintiff and his partner were merchants established in France; that having sold considerable quantities of wine to various persons in this country, Cummings, the deceased partner, came hither to collect the debts; and accordingly obtained promissory notes in his own name for many of them; that before the notes became due, Cummings died, and Nixon, the defendant, took out letters of administration upon his estate, by virtue of which he received and recovered the money payable on the promissory notes; that soon afterwards M'Cartey, the plaintiff, came to America to settle the affairs of the company, and demanded the amount of the money received by Nixon upon the promissory notes; but that Nixon refused to pay it over, contending, that as administrator he was bound to discharge the debts of Cummings according to a legal priority; and that if he complied with M'Cartey's demand, he would be liable as for a devastavit should debts of a higher nature appear. The Court, however, held, that the surviving partner, being responsible for all the company debts, was entitled to recover all the company credits; and that Nixon must be considered as having received the money in trust for him. The same principle is recognized in Wallace versus Fitzsimmons. 1. Dall. Rep. 248.