Tilghman C. J.
(After stating the principal facts.) 1. By the principles of the common law, the sale of the factor is the sale of the principal, the factor being no more than the instrument by whom the principal acts. An action may indeed be supported by the factor, and a payment made to him is good, unless forbidden by the principal. But the principal may take the collection into his own hands, and *28 maintain an action in his own name. This power of collection, however, is subject to certain restrictions. The factor has a lien to the amount of his account against the principal; ancl ^ goods have been sold by the factor in his own name, without any notice of their belonging to another, the nur- , 00 ’ 1 chaser who took them on an understanding that they were the property of the factor, may set off a debt due from the factor to himself. Subject to these and some other exceptions, not necessary to be enumerated, the money for which the goods are sold, is considered so entirely the property of the principal, that - wherever it can be traced and identified, though it has changed its form, by an investment in other goods, or even in lands, the principal shall retain it. And if the factor takes notes or lands in his own name, he is no more than a trustee for the principal. This was recognised' as the law of Pennnsyhernia, by the late Chief Justice Shippen, in the case of Price v. Ralston assignee of Pollard, a bankrupt. 2 Dall. 60. In that case, Pollard, the agent of Price, had taken a bond in his own name, yet held, that it was the property of Price. Indeed, this law has not been denied by the defendant’s counsel, but they distinguish the case of a licenced auctioneer, from the common case of principal and factor, and contend that by virtue of our acts of assembly, the sole power of collection, including the . right of action, is vested in the auctioneer. If it be so, it ought to be made out by express words,- or unquestionable inference, because the consequences are of extreme importance to this city. Let us examine then, the reasons assigned for this construction of the acts of assembly. I say construction, for it is not pretended, that there is any express proviso on the subject. The auctioneers are appointed by the governor, and have the exclusive right of selling by public auction; they give bond for the payment of duties due to the Commonwealth, and for the performance of their official duty in-general ; and are entitled to a commission for selling, collecting, and paying over to the person whose goods they sell. These, I think, are the principal features, in which an auctioneer is supposed to differ from a common agent. ■ As for the appointment by the governor, and the exclusive right of selling, I cannot perceive, why they should change the general principles of law ; indeed the circumstance of exclusive privilege of sale, renders it necessary, that -the owners of the goods *29 should retain every right which they possessed before the making of these acts of assembly, because they are deprived of the choice of agents. The object of those acts, is twofold; — to obtain a revenue for the state; and to prevent the mischiefs arising from unlicenced auctioneers, which afforded a facility to the sale of stolen goods. If these objects can be attained, without breaking in upon important principles, previously established, it is our duty to preserve those principles. It is evident, that the legislature, far from intending to injure those persons whose goods are sold, has been anxious to protect them. This appears from the second distinguishing circumstance relied on by the defendants ; the bond which is given by the auctioneers with security, before they are permitted to discharge the functions of their office ; which bond was decided in the case of Yard v. Lea’s executors, to be,'in fact, for the benefit of their principals. But this security, though of use, affords no just ground for depriving the principal of all controul over his property; because it is altogether inadequate to the immense amount of goods sold at auction. Indeed, so trifling is it, compared to that amount, that it will operate as an excessive grievance, if it is made a pretext for vesting the auctioneers with the exclusive right of collection. But what is there in this security, which should divest the principal of his usual rights ? Suppose a private factor should give security; would that make any change in the rights of his principal? Surely not; and why then, should it make any alteration, in the case of an auctioneer ? The next circumstance relied on, is, that the law gives a commission to the auctioneer, for selling, collecting, and paying over ; and therefore it is argued, that by implication, it gives him the right of collecting; otherwise he would be entitled to no commission. This objection, is easily answered. If the principal prevents the auctioneer from collecting, he must pay the full commission, because he himself is the cause of the non-collection. But, it is said, the law makes the auctioneer liable for the duties dn all goods sold by him, and therefore it must have been intended to give him the collection. I grant that he must be understood to have the power of receiving, so far as concerns those duties, and his commissions. And for this purpose, he may retain the necessary sums, from all monies which come to his hands; and he has, moreover, a lien on all sums uncollected. *30 He may forbid payment to the principal, so far as concerns duties and commissions ; and even without express notice, I apprehend, that all persons are bound to know, that duties and commissions are due on all sales at auction, and if paid t0 any person but the auctioneer, it is at the peril of the pay- - r . 7 , : , er. In the present instance, there is no conflict between the plaintiff and the auctioneers. All duties and commissions have been paid; and on full consideration of the subject, I could not entertain a particle of doubt, were it not for the case of Willing & Co. v. Rowland & Co., which has been pressed upon us by the counsel for the defendant. This case is to be found in 4 Dall. 106, in a note to the case of Lea's executors (in error) v. Yard. From the short report of Mr. Dallas, it appears that the auctioneer was insolvent, and the defendant claimed the right of set-off of a debt due to him from the auctioneer. It does not appear, that the Court decided on the right of set-off; but they were of opinion, that the defendant could not support the action, because the act of assembly vested the right of action in the auctioneer. With all the respect which I sincerely feel for the Judges who made that decision, I may remark, that there appears to have been not much argument, and in the hurry of a jury-trial, there is very little time for deliberation. It is worthy of remark too, that from two manuscript notes which have been shewn to us, it would seem, that the Court ruled the case upon a point not made by the counsel. Mr. Bradford, on behalf of the plaintiff, relied, not on the act of assembly, but upon the common law, which, he contended, under the particular circumstances of that case, barred the plaintiff’s action. We know not how long before the commencement of the suit, the goods were sold; possibly the time might have been considerable, and the purchaser might have settled with the auctioneer, not knowing the plaintiff in the transaction. I might distinguish the case before us, from Willing v. Rowland, by observing, that the present action is not for the price of the goods, but for damages for not taking, and paying for them. But as that would leave a very important question undetermined, I think it best to decide now, upon the very point which is supposed to have been decided in Willing v. Rowland. I know the danger of departing from precedent, but it would be too much to say, that in no case is it to be departed from. Where former deci *31 sions have passed into a rule of property, no authority inferior to the legislature, should attempt to shake them. But where that is not the case, and it is evident, that a judgment has been given without time for deliberation, it may be proper to do what the same Judges would have done, had they , „ , ,, been allowed an opportunity. It is said, however, that the case of Willing v. Rowland, has been sanctioned by the High Court of Errors, in Lea’s executors v. Yard. Had that been the case, my mouth should never have been opened in opposition to it. But it is not so. The only point decided by the Court of Errors, was, “ that the auctioneer’s bond was intended by law, for the benefit of his private customers, as well as for securing the duties payable to the government.” These are the very words of the Court, in the only report which we have of that case. 4 Dall. 106. Indeed, it is evident, that there was no other point in contest; and therefore, any other decision would have been extra-judicial. This observation may apply to the opinions delivered by Judges Smith and Brackenridge, when the same case was before this Court, before it went to the Court of Errors; so that I understand the case of Lea’s executors v. Yard, as affording no support to Willing v. Rowland. Upon the whole, when I consider the prodigious amount of sales at auction, and the consequences of establishing it as a principle, that the vendors lose all controul over their propertyj when I consider too, that the act of assembly, neither by express words, nor according to my apprehension, by intendment, establishes any such principles; and that it rests upon a single decision made in the hurry of a jury trial; I cannot hesitate in declaring my opinion, that the plaintiff may support this action in .his own name.
2. The second point relates to damages. It is objected, that the plaintiff has recovered the full price of his teas, contrary to the terms of sale, by which Taggart was allowed a credit of 60, 90, and 120 days. But it is not so; he has neither recovered nor demanded from the defendant the full price of the teas. It is confessed, that the agreement was broken by Taggart, before the commencement of this action. No case was, or could be cited, to shew that the plaintiff had not cause of action. If he had cause of action, he had a right to recover the full amount of his damages. What was that damage ? It arose from Taggart’s throwing upon him a *32 quantity of tea, which he had promised to take at a certain price, and its amount was the difference between the price agreed on, and its value, when Taggart refused to take it. The defendants’ counsel rely principally on the cases of Mussen v. Price, 4 East, 147. Dutton v. Solomonson, 3 Bos. & Pull. 582, and Brooke v. White, 4 Bos. & Pull. 330. But those cases differ essentially from the present. The goods were sold and actually delivered upon agreements, that the purchasers should make payment in bills payable at a future day. The purchasers failed in delivering the bills, and the plaintiffs, before the expiration of the time which the bills would have had to run brought suit, not for damages for the breach of contract in not delivering the bills, but for the price of the goods; they declared on a general indebitatus assumpsit. This kind of action is founded on an implied assumption, and the Court decided, that the law would not imply an assumption against an express agreement. If the plaintiffs in those cases had waited till the expiration of the time allowed for the payment of the bills, indebitatus assumpsit would have lain; but not before. Now how do those decisions bear upon the case before us, in which the action is not indebitatus assumpsit but special, on the breach of contract ? The defendants’ have done all in their power to rescind the contract. On that ground the plaintiff meets them; he consents that they shall not take the goods, but insists on immediate satisfaction for the injury he has sustained. And in so doing he has favoured the defendants. It would have been worse for them, if at the end of 120 days they had had to pay the full price. When Taggart refused to accept the goods, the plaintiff might have kept them without a re-sale, and brought suit for the damage. But without a re-sale, it would have been difficult to ascertain the amount of damage. For this purpose, a re-sale has been the usual practice, and it was sanctioned by this Court, in the case of Adams, &c. v. Minick. The jury, however, were told, that-they were not bound by this mode of estimation, if they could find another more agreeable to the truth. Upon the whole, not perceiving that the verdict was against law or justice, I am. of opinion, that the rule to shew cause should be discharged.
Gibson J.
Since the argument, I have reflected much on *33 tae decision in Willing v. Rowland, which, I am Well satisfied, ought not to stand. It was, in effect, a Nisi Prius decisión, with this difference, that all the Judges were present, and concurred: but that it was a hasty opinion, appears, not only from its having been delivered while a jury were in waiting at the bar, but also from the manuscript note of Chief Justice M‘Kean ; from which it seems the point was decided on ground, different from that on which it was argued by the counsel. Lea v. Yard, affords but little additional authority, as the point did not necessarily arise : for, although the auctioneer may not have an exclusive authority to collect, he has an undoubted authority to receive the price of the goods as the agent of the vendor; and hence, the same necessity, that his official bond be considered a security for whatever may pass through his hands in the usual course of his business. This case was affirmed in the high court of errors and appeals ; but on what ground, we know not: in all probability, the present point was not considered. Then, authority being out of the way, there is nothing on which an argument can be rested. It never was the object of the legislature to create a monopoly of this sort of business, or vary the common law relation of buyer and seller; but only to collect a duty, and, at the ^ime time, secure the seller from the misconduct of an agent, whom he is, in some measure, compelled to employ. What else can be inferred from the commission and bond of the auctioneer? An exclusive right to collect is not necessary to secure the duties to the state, or his commissions to the officer: the lien which he has by the common law, is amply sufficient for that. In the actual state of the auction business, a contrary construction would lead to the most intolerable evils. Goods to the value of twenty times the amount of the auctioneer’s bond, as was the case in this very instance, are put into his hands to be sold: can it be believed that the legislature ever intended the seller should trust to the auctioneer’s solvency ? We must first believe they intended to put an end to the auction business altogether. The extension of this mode of Selling, unprecedented in former times, and the frequent instances of failure of those officers, to an amount that renders their bond unworthy of consideration as a security, would forbid any one of reasonable discretion, to trust to a responsibility so precarious. Had the decision of Willing v. Rowland, even been the deliberate *34 opinion of the Court, I would overrule it without hesitating; for, however comparatively harmless the principle it contains might be, when applied to the state of things which existed when that case was decided, to apply it to the present °f things, would be certain ruin to every one compelled by necessity, or induced by indiscretion, to send his goods to the auction room. Had the present prodigious extension of the auction business, presented itself to the mind of the Court, as a thing likely to take place; it cannot be doubted, but the decision would have been different.
On the other point, I have no doubt. Where goods arc sold and delivered on a credit, and the vendee has violated •the contract only in one particular, the damages will be commensurate only with the actual breach. But the present is a very different case from that of á contract partly executed by the vehdee, and broken only as to a condition incidental, or collateral, to the principal thing he was bound to perform. Here, the defendant rejected the contract in toto, and therefore, violated it in every part. The damages recovered, are not the price of the goods sold, but a compensation for the disaffirmance of the contract; and the difference on the resale, is merely the measure of the damages actually suffered. Properly speaking, the seller cannot recover the priqg, where he has retained the goods in consequence of the buyer’s refusal to comply with any part of the contract: he recovers damages for the breach of a contract which was entirely executory when it was broken; and the breach, having put an end to every idea of further performance by either, is a violation of the contract in all its parts, for which the seller may recover whatever damages he can prove he has sustained. The buyer, after having disaffirmed the sale, as far as he could by acts of his own, must not be permitted to treat the contract as still existing for the purpose of being performed by him, specifically ; but the seller may, if he please, consider it as existing only for the purpose of giving a remedy for its breach; and this he has here done, by retaining the goods, and going merely for the loss actually suffered, as ascertained by the difference of price on the re-sale. It is for the same reason that the vendee, when the purchase has been fraudulent on his part, is precluded from insisting on the terms of the credit: the law will not suffer him to avail himself of conditions dishonestly obtained; but the contract,- for *35 the purpose of compelling him to answer in damages, remains in full force. I am of opinion the plaintiff should have j udgment.
Duncan J.
delivered an opinion to the same effect, which has been mislaid'.
Motion for a new trial refused.