Duncan. J.
The facts in this case are so fully and clearly stated in the opinion delivered by the Chief Justice, before whom the cause was tried, that it is unnecessary to enter into a recapitulation of them.
The point reserved was, whether the owner of goods sold at auction, could on this contract, support any action against the buyer. That he cannot, is not so much urged on the reason of the thing, as on the authority of the decision in the case of Willing et al. v. Rowland et al. 4 Dall. 106. Had this been a solemn determination of the Supreme Court on debate, I would hesitate before I acted contrary to it. Had it been in a Court of last resort, I would be bound by it, though my judgment was not satisfied with the reasons of the decision. But although this case rises in the scale of authority above a mere nisi prius opinion, yet it does not amount to an authority concluding the question. It was given in the hurry of a jury trial, on a point not made by the counsel, on which there had been no argument. It has not established any practice under it; nor will a contrary decision unsettle any rule of property, or shake any right acquired on its authority. Had it this operation, I would acquiesce in it. As the opinion of a learned Court, delivered by an eminent Judge, it commands my respect, but does not bow down my judgment. That Judge has delivered his sentiments on the authority of these opinions, in Kerlin’s lessee v. Bull, 1 Dall. 178. “ Where there has been a solemn determination before two Judges of the Supreme Court, after debate, there ought always to be great consideration paid fo *540 it, that the law may be certain ; and when an act has retíeived a construction, and been long accepted and received as a rule of property, though some may not be satisfied in their private judgments, were the matter to be newly resolved, it js but reasonable we should acquiesce, and determine in the 1 same way, on a doubtful case, to prevent greater mischiefs, which may arise by shaking a number of estates, and from the uncertainty of the law.” In the case Ex parte Bollman v. Swartwout, 4 Cranch, 102, Ch. J. Marshall observes, that, uniformity of decisions is often as important as their abstract justice ; but denies that a Courtis precluded from the right, or exempted from the necessity, of examining into the correctness or consistency of their decisions, or those of any other tribunal. A case that cannot be tested by principles, is not law ; and in a thousand instances have such cases been declared so, by Courts of justice. What was said by Judges Smith and Brackenridge, in the case of Yard v. Lea’s Executors, of this decision, was not necessary to the decision of the cause ; was not a matter in judgment, and only used by way of argument and illustration. I profess an unqualified reverence for decisions, when, from being acted upon for a long .series of time, they have established a rule of property; a rigid adherence to them can alone give security and stability to property, and certainty to the law. I cannot consider this solitary decision in Willing v. Rowland, as foreclosing all inquiry, or irrevocably establishing the construction of these acts. Paying all proper respect, and giving all due consideration to the opinion of these respectable Judges, I proceed to the enquiry.
An auctioneer must be considered as an agent or factor, but falls within the very definition of a factor. A factor is an agent or broker employed by merchants to buy or sell goods, negotiate bills, or transact business of any kind on their account, for which he is entitled to compensation or allowance.
The general rule of law is, that á factor’s sale creates a contract between the buyer and the owner, which entitles the latter to call on the former for payment, at any time before the money is paid over to the factor. This general principle is admitted, in the case of Willing v, Rowland, but the case is decided on the ground, thac this right is taken away by act of assembly. To take away the right of the owner, founded *541 on the mercantile law, as is believed, of the whole commercial world, would seem to require some express statutory provisions. I have looked in vain for any such in the several acts, and there can be no clearer rule in the construction of statutes than this, that they do not make any alteration in the common law, farther or other than as the statute declares, Indeed, these acts are declared by the legislature to be revenue laws. In the act of 9th December, lf^S, rendering perpetual the acts relative to auctioneers, the reason assigned for the enacting and continuing these laws is, the exigencies of the State. Nor is there any fair induction from these acts, but this, that the legislature so intended. An act which gives to the owner an additional security, cannot, by that alone, divest him of his common law security. But this security is by no means an equivalent to the personal obligation of the buyer. This security may be ample to cover the duties to the State, but it is mocking the owners, to say it protects them. The sales made of this cargo at this time by these auctioneers, shew that it is as nothing : for all the aggregate amount of all the bonds given by all the auctioneers in this city, is not equal to these sales. To take away an ample security without substituting an equivalent, is an act of injustice not to be imputed to the legislature. Nor can the provision for allowance to the auctioneer from the owner, for selling, collecting the money, and paying it over without any loss to the principal, destroy the relation between the owner, the buyer, and the auctioneer. For the collection and payment over of the money, is a power which the factor, as auctioneer, poásessed from the very nature of the trust. The act imposes no new duty, creates no new obligation, confers no new rights distinguishing the situation of an auctioneer from any other factor. It fixes the commission beyond which he shall not go, for all these services, and does nothing more. Nor ean the duties to the State operate so as to change the relation of the parties. For the auctioneer has security for the duties, and his commission: he has a lien on the goods. Auctioneers are licensed in England. A duty is payable to the government. The constant practice is, to bring the action in the name of the principal, and frequently, the auctioneer is the only witness to prove the sale. An auctioneer is, for many purposes, in the law, considered both as the -agent of the buyer and the owner. The introduction of this new *542 principle, has not the convenience of trade to recommend it. The balance of convenience will be found in favour of the principle, which the wisdom of ages has settled. Among t*ie multitude of inconveniences and mischiefs that this new doctrine would introduce, would be, that in cases of bankruptcy and insolvency, when the money had not been paid to the auctioneer, the owner would only come in for a dividend ; whereas, under the law as it stood before this decision, he would receive the debt itself. Nay, even if it had been paid to the auctioner, but the money itself could be specifically traced, as if kept in a separate bag, he could follow the money itself. So in case of death of the auctioneer who sells on credit, indebted by specialties which will sweep away his whole estate, he would, under the rule of construction in Willing v. Roland, lose his debt; but under the construction adopted by this Court, the money due on the sales would be paid to the principal, and not the administrator of the auctioneer. So if the factor took a bond, and became a bankrupt, the owner would be entitled to the money due on the bond, as was decided by the same Court who tried the case of Willing v. Rowland. Price v. Ralston, 2 Dall. 60. It would follow, that the buyer could set off a debt due by the auctioneer, though such, it is admitted, is not the law. But it would-be an inevitable consequence, if there were no contract between the owner and the buyer. There is no resemblance between an auctioneer and a sheriff. In the one case, the sale is voluntary; in the other, compulsory. In the one, the owner can prescribe the mode of sale, the time, and the terms of payment; in the other, the defendant has no con* troul. In the one case, the property until sale, is the property of the owner; in the other, it is divested, and vested in the sheriff for the purpose of raising the money due, by a sale. It is not fit, that a question of such daily occurrence, involving the whole concerns of this most extensive branch of commercial transactions in this city, should be left in doubt. The Court have, therefore, without attempting to distinguish by nice discrimination, this action, from the case of Willing v. Rowland, thought it advisable to meet and decide the general question. My opinion is, that the case of an auctioneer, commissioned under the laws of the State, stands in this respect, precisely in the situation of an agent or factor, having authority to sell; that the owner of goods the sold, can *543 stop the money in transitu, and can sustain an action' on the contract before the money is paid over to the auctioneer in his own name; and that the present action can be supported in the name of Girard.
On the motion for a new trial, as to the measure of damages, I entirely agree with the opinion given on the trial by the Chirr Justice. The difference between the sale and the re-sale, afforded the best evidence of the damage sustained by the plaintiff. The contract was violated, by not giving notes according to the conditions of sale, and on a special count the whole damages sustained by the non-performance of the agreement, being ascertained by the resale, the plaintiff was entitled to recover. If he could not recover these, he could recover nothing. He was not obliged to keep the teas, and wait the expiration of the credit. A right of action arose, on the refusal to give the notes and comply with the contract; not giving him a present action for nominal damages, and a future action for the real damages ; but giving him an immediate cause of action, for complete and final compensation. I entertain strong doubts, whether, if the plaintiff recovered in this action nominal damages for not giving the notes, and at the expiration of the credit had brought his action for goods sold, the defendant could not have pleaded the former recovery in bar. The doctrine is very subtile. Learned Judges have differed on. it. Lord Ae vaneev, in one of the later cases, Dutton v. Solomonson, 3 Bos. & Pul. 583, expresses his doubts, whether, at the end of the credit, indebitatus assumpsit can be supported for goods sold, if it did not lie before ; but states the only difference to be, that in indebitatus assumpsit, the defendant might be held to bail without a Judge’s order; on the special agreement it would require a Judge’s order; but with this difference alone, the remedy would be as effectual in the one case as the other.
I am for letting the verdict stand, and entering judgment upon it.