The opinion of the court was delivered by
Duncan, J.
It is attended with some difficulty to understand the declaration, whether it consists of one, two, or three counts. But however this may be, and however faulty it might have been *32 on demurrer, yet the verdict cures all these defects. The additional errors are added without leave of the court, and against their rules, and will not be noticed. Experience has shown that this is a most useful regulation; and it will be adhered to, inflexibly, by the court. If, from oversight, a material matter has been omitted in the required specification, on which any matter rests, the court will, to prevent justice from being defeated, permit It to be added; but never on mere formal objections, no way material to the merits. It will be for the wisdom of the legislate''1: to consider, how far'it would be proper to require a specification of errors in the praecipe for the writ. Errors of substance, which induced the writ, would not be likely to escape the counsel.
It is with pain I have observed, that frequently after the record has been brought up, the ingenuity of counsel is seriously tasked, to pick out some hole in the proceedings, and judgments reversed, on mere technicalties, not entering into the real justice of the case. I do not mention this with relation to this particular case. I speak impersonally, not reflecting on the practice of any gentleman; and I will not say but it may be their duty thus to act. Once for all, it is too late, after verdict, to allege the variance between the count and writ. The writ is not before the court. Nor ought the court below to grant oyer of it for this purpose. Debt under the act of assembly, on a verbal promise, still so far partakes of the nature of the action of assumpsit, that if a declaration is filed in assumpsit, and the defendant pleads the general issue, under'which he can give almost every thing in evidence to defeat the action, vrhich he could have given in evidence on any plea, I am far from thinking a judgment ought to be reversed for that reason; nor would I reverse it in the first case, whether the verdict and judgment was in debt or damages.
Dismissing the questions' of mere form, what would be the substantial cause for reversal ? It would be, that either the promise is a nudum pactum, or made on an illegal consideration. If it so appears on the declaration, no verdict could cure the defect, as the consideration is the gist of the action. That it is an illegal consideration, is denied by the counsel in error, and I think with good reason. This is not a contract to tempt a woman to transgress the law, nor the wages of iniquity. It is a promise in consideration of past cohabitation, — praemiumpudicitiae, not prostitution. There both parties, in a certain sense, are in pari delicto, yet the consequences are very different, both as to bodily pain, and mental anguish, and the loss of their caste in society. For, however humble the lot of the defendant might be, yet, it was not a disresputable situation. The woman is disgraced — -No money can restore her to her former state in society; while it does not pluck a feather from the man’s wing, unless in cases of gross seduction. The man who has thus humbled an honest woman, if he will not marry her, is in honour and conscience bound to make some provision for her; *33 and, as a very learned Judge (Bathurst,) said, in Turner v. Vaughan, 2 Wils. 339, where a bond given to a woman in consideration of past cohabitation, was decided to be good in law,— “God forbid, where a man is bound in honour and conscience, that a court of law should say the contrary.” Braclon says, when a man cohabits with a woman, it is legitima concubina; and Exodus, c. 22. v. 16. “ If a man entice a maid, that is not betrothed, and lie with her, he shall surely endow her to be his wife.” So, Deuteronomy, c. 5. v. 28, 29. “If a man find a damsel that is a virgin, which is not betrothed, and lay hold on her, and lie with her, and they be found, then the man that lay with her shall give to the damsel’s father fifty shekels of silver, and she shall be his wife, because he hath humbled her; he may not in any ease put her away, all her days.” Gould, Justice, expressed himself in that case precisely to the consideration. “ The court may take this for a lawful and conscientious consideration. We must presume that the defendant hath done what in honour and conscience he ought to have done; and that he thought himself a wrongdoer, and gave the plaintiff this bond to make her amends;” and it is for the nonperformance of the promise to give her such bond that the present action is brought. So here, the plaintiff himself must have thought himself a wrongdoer; and, under this compunction, promised the plaintiff below to make her amends. If I found myself chained down by a series of decisions settling the law, that this was an impure consideration, I would be bound so to declare it. But the reason of the thing, and the law have decided what the Conscience of every honest man would dictate; that the contract is not wicked, and void, but a righteous, and binding one; and that it is the duty of a man, who has thus humbled a woman, to provide for her. The parties, it would seem, neither of them, can plead in excuse youthful passions; he a widower, more than forty; she an unbetrothed damsel, not less than thirty-five. There was no evidence of his poverty; or that the promise was extorted from him by duress; or that the sum promised is extravagant for one in his situation to pay; or that the lady was other than a virgin spinster; and the prima facie presumption is always that the man is the seducer, which answers one objection of the counsel of the plaintiff in error — that the act was not alleged to be done at his request, and the consideration a past one, and therefore not a good consideration for assumpsit. Thus it appears, that it is not a vicious consideration. But it is said to be a nudum pactum, so entirely voluntary, and without consideration, and that the promise would not be binding. The distinction is well understood between a consideration which will not raise an implied assumpsit, and one sufficient to support an express promise.
The duty of provision was a moral one; and where a party is under a moral obligation to do a thing, a promise made to do it will not be considered a nudum pactum, though no other imme *34 díale consideration appears. This equitable rule appears to have been first laid down in Hawkins v. Saunders, Cowp. 290, by Lord Mansfield, who observed, ei That the rule to make a consideration to support an assumpsit, that it must be an immediate benefit to the party promising, or a loss to the party to whom it is made, is too narrow; for, that any legal or equitable duty is sufficient for an actual promise to pay; though no court of law or equity could enforce the moral obligation, the honesty and rectitude of the thing is a sufficient consideration.” Long before this, the principle had been in fact acted upon, in an anonymous case, 2 Show. 184, where it was held, that indebitatus assumpsit would lie for meat and drink for a bastard child, against the putative father; and it was said by counsel to be my Lord Hale’s opinion, that where there is a common charity, and a charge, it will lie; and undoubtedly a special promise would reach it. In Scott v. Wilson, 4 Geo. IV. MSS. 1 Esp. Dig. 189, is a case stronger than this; it was assumpsit for nursing a bastard child. It had appeared the child had been put originally to nurse by the mother’s uncle, with whom it continued, until the mother’s death; and the father, on being applied to, promised to pay, on which the action was brought; and it was objected, that this was nudum pactum, the child not having been taken on his credit; but, by Lord Mansfield, the father was under a moral obligation to provide for the child; his bare approbation would be construed into a promise, and be sufficient to bind him. Here the promise is express, and for a certain sum. The general rule of Lord Mansfield, as to moral duty and obligation, has since received some qualification. It is said, that he did not use the term moral obligation as expressive of a vague and undefined claim, arising from the nearness of relationship, but of those imperative duties which would be enforceable by law, were it not for some positive rule, which, with a view to general benefit, in that particular instance, exempts the party from legal liability. The subject is very fully considered by the reporters in a note in 3 Bos. & Pull. 249 ; and, taking the rule even in that measured sense, there is in this case a pecuniary consideration, founded on a legal right, to support the promise. The woman would, on the prosecution of the indictment for the fornication and bastardy, receive a reasonable allowance for lying-in expenses. These she might release; and this would be considered by the Court of Quarter Sessions, in passing sentence; and if she offered to relinquish them, in consequence of the defendant’s promise, this will be some consideration, some pecuniary benefit, the quantum, not the essence, or foundation of the promise. The Quarter Sessions might have allowed her much less, but his own sense of justic.e might move him to go beyond this, and the court would not stint his liberality. They would eagerly lay hold of any legal foundation to compel him to perform what his own sense of justice induced him to promise; and though part of the consideration might be lawful, *35 and part unlawful, the lawful part is sufficient foundation for the action of assumpsit, 4 Rep. 94. If any part was virtuous, however small, it was in law a sufficient consideration, moving from her to induce the promise; if the promise was fairly and freely made, and did not, from its disproportion to the man’s means, betray imposition.
The opinion of the court comes before us in a very naked state. The evidence is not returned, nor was the judge, I suppose, desired to return it. The evidence might relieve the case from obscurity. If the couTt intended to say that the composition of the crime, and smothering the prosecution, was a good consideration, I could not give my assent to this. If a prosecution was threatened, or commenced before the magistrate, and the withdrawing that prosecution was the sole eonsidération, I would consider this an illegal act, and the promise void, as induced by that illegal agreement. I am led to believe that we have not the full charge, because that is not the consideration laid in the declaration. Yet we must take it as it is stated in the record; and, understanding it as I do, and as I think a jury would do, there is error iri that part of the charge. It certainly was left to the jury in a way that would mislead them. 1 cannot agree with the learned judge, in another part of the charge. This was not an action for the money promised to be secured by the bonds, for that was not all due; but for not giving bonds agreeably to the promise. In such case the plaintiff goes for the whole damages, and never can have another action. He cannot first recover for not giving the bonds, and then at the time when the money would have been payable, had they been given, recover that money. If the plaintiff proved a promise to give bonds for #1200, and he refused to give the bonds, in this action she is entitled to full compensation, and the compensation could be nothing less than what she would have recovered on the bonds, had they been given. He refused to carry his engagement into effect; and the whole loss of the plaintiff should be the standard of damages, and not the discretion of the jury. A recovery in this action of one cent might have been pleaded in bar, to any action brought on the same contract; for, if that was not the case, though #1200 had been given, this could not be pleaded in bar to an action for the money. Judgment on this, like judgment for the penalty of a bond, discharges the whole obligation — the whole breach had occurred: it could not be split into several actions. This principle was settled in Girard v. Taggart, 5 Serg. & Rawle, 19, 543. It was there said, “that a right of action arose on the refusal to give the notes, and comply with the contract; not giving the plaintiff a present action for nominal damages, and a future action for the real damages, but an immediate cause of action for complete and final compensation.”
Judgment reversed, and a venire facias de novo awarded.