## Rinehart *against* Olwine.

Where goods are sold on credit, the vendee to give his note, which he refuses to do after the goods are delivered to him, an action may be maintained for a breach of the contract before the expiration of the credit, in which the measure of damages is the price of the goods.

It *seems* a recovery in such action would be pleadable in bar to an action brought to recover the price of the goods.

Where goods are sold on credit, the vendee to give his note, a delivery of part of the goods, without a demand of the note, is not a waiver of the vendor's right to demand it, where he acted in good faith, and fully complied with the contract.

Where, by the terms of a lease, the lessor is to receive as rent a share of the grain raised, deliverable in the bushel, he has no interest in it until it is severed and delivered to him.

*Quære*, whether the manure made on a farm is the property of the tenant.

ERROR to the Common Pleas of *Chester* county, in which William L. Olwine brought an action on the case against Charles Rinehart, and declared " that whereas the plaintiff, on the 15th of March 1841, caused to be put up and exposed to sale by public auction, in lots, certain goods and chattels, upon and subject to the following terms and conditions of sale, viz., that the highest bidder should be the buyer ; any person purchasing to the amount of eight dollars and under, should pay cash ; and any person exceeding that sum should have nine months' credit, by giving their notes with approved security before the removal of the goods, with privilege to the purchaser of the grain in the ground to store and thresh the same in the barn, leaving the straw and the chaff on the premises ; of all which premises the defendant, at the time the said goods, &c., were so put up, &c., had notice. That at and upon the said sale, &c., the defendant became and was the highest bidder for, and was declared and became the purchaser of, the following goods and chattels, upon, &c. the said terms, &c. of sale, at and for the following sums of money, then bid by him, &c., to wit, (enumerating them), and one field of wheat in the ground for $105.96, making altogether $131.98 ; and in consideration that the plaintiff had then delivered the said goods and chattels to the defendant as such purchaser, the same exceeding eight dollars, he then promised the plaintiff to pay him the said sum at the expiration of such nine months' credit, and give him his note with approved security therefor, &c. ; and although the plaintiff has always been ready, &c. to perform the said contract on his part, yet the defendant, not regarding, &c., has not, although often requested, &c., paid him the said sum, &c., or given his note, &c. for the same, according to said terms, &c. of sale, but has hitherto wholly neglected, &c."

The declaration also contained a count for goods sold and delivered, and another upon an account stated.

It appeared that in 1840 John Olwine leased certain premises on shares to his son, the plaintiff, who was to render as rent one-, half of all the grain raised, except the potatoes, deliverable in the bushel. About the 1st of October of that year, the plaintiff sowed a field of wheat. On the 27th, the premises were sold under an execution against John Olwine, to John Kimes. In the spring of 1841, the plaintiff sold to the defendant, at public sale, certain farming utensils, hay, oats, and 8 acres 104 perches of wheat, growing in the ground, at a credit of nine months, the defendant agreeing to give his note with approved security. Some of the articles sold were delivered to the defendant. In November 1840 the defendant called on the plaintiff, and said he had purchased the premises, and wanted some straw and a ton of hay as rent for them from that time till spring. Afterwards, on the day of sale, the defendant laid claim to the grain and the manure lying on the premises, and the plaintiff threatened to sell the manure unless the defendant gave up the grain. After some dispute, an agreement was made between them, before the grain was sold, by which the defendant was to give up his claim to the grain in the ground, and the plaintiff to leave for the use of the defendant certain manure, straw in the mow, and ten or a dozen rye battons, which were accordingly left on the premises, on which the defendant entered and took possession on the 1st of April 1841. The wheat was measured in May following. The defendant was not present at the measurement, but had notice from the plaintiff at the time that it was about to be made. In August following, the plaintiff called on the defendant, and demanded his note for all the goods bought by him, which the defendant refused to give, but offered to give the plaintiff his note for all except the grain.

The following points were submitted by the defendant :

1. The price of the goods cannot be recovered in this action, the credit not having expired.

2. If anything can be recovered, it can be only damages for not giving the note.

3. No damages on that account have been alleged or proved.

4. The defendant was right in refusing to give his note for the full amount of the grain and goods sold, as only one-half the grain belonged to the plaintiff.

5. The defendant had no authority to sell the grain in ground to the plaintiff, and the plaintiff had no right to sell the manure to the defendant. Both the manure and one-half the grain belonged to John Kimes, the purchaser of the real estate.

6. The value of the grain growing in the ground sold, cannot be recovered in an action for goods sold and delivered, as declared for in this action.

7. The narr. avers, " that in consideration that the plaintiff had

[Rinehart v. Olwine.]

then delivered the said goods and chattels to the defendant as such purchaser, the defendant promised to pay $131.98 at the expiration of nine months, and give his note with his approved security." There is no evidence that the grain in the ground was delivered by the plaintiff. It is not susceptible of delivery as goods and chattels; and as the plaintiff has not performed his part of the engagement as he avers, the defendant is excused in not giving his note.

8. The plaintiff can only recover the price of one-half the grain in the ground, viz., 4 acres 52 perches.

9. The plaintiff having delivered the goods without demanding the note, waived his right to exact it.

10. The measure of damages for not giving the note (if the jury should believe the defendant was not justified in declining to give it), is the loss he sustained, if any, in not giving any security for the amount of the goods sold.

The Judge charged the jury as follows:

There is no question but that all the chattels personal, strictly speaking, mentioned in the declaration, belonged to the plaintiff at the time of the sale, nor that the defendant neglected and refused to give his note with surety for the goods purchased by him; and therefore it is conceded the plaintiff is entitled to some sum in damages for the breach of the special contract. But it is insisted that one-half the wheat sown by the plaintiff, and sold by him to the defendant, did not at the time of sale belong to him; and therefore the jury, in estimating the damages, should throw out of consideration a moiety of the grain in the ground. As the plaintiff seeks to recover the value of all the articles sold, including all the grain, as the measure of damages, or, at the very least, it is asked that, in estimating the damages, you should consider all that was sold, it becomes necessary to inquire whether the defendant's position be correct. Did, as alleged, one-half the grain then growing in the ground pass in specie to the purchaser?

It is undoubtedly true that accruing rent is incident to the reversion, and therefore a purchaser, either from the landlord or at sheriff's sale, is entitled to all rents growing due at the time of his purchase. It is also true that rent may be reserved in kind, or of the produce of the land on shares, and for the non-payment of such rent a distress may be made either of the grain raised, or other chattels of the tenant, or a personal action may be sustained against the tenant or his assignee to recover the value. *Fry* v. *Jones*, (2 *Rawle* 11). Under certain circumstances, growing grain will be taken as part of the realty. As, for instance, where the owner of land sows it, and then sells and conveys it, the grain growing will pass with the land, unless specially reserved. *Wilkins* v. *Vashbinder*, (7 *Watts* 378). But under other circumstances, such grain is not considered of the realty; as where an execution is levied on it, or it is sold by the owner prior to a conveyance

[Rinehart v. Olwine.]

of the soil. In these and similar cases, it is, in contemplation of law, severed from the freehold, and is to be treated as a chattel. So too under a contract of rent by which the landlord is to recover a portion of the grain raised, to be delivered in the bushel, as in this case, I do not think he acquires any property in the grain sown. The thing belongs to the tenant, who, in Pennsylvania, is entitled to the emblements. If he sell the crop, his vendee will take it. If he cut and thresh it, and sell the produce, the landlord cannot pursue it in the hands of a purchaser. His remedy is by distress on the premises, or a personal action against the tenant. If this be so, it follows that a purchaser of the land, whether at sheriff's sale or otherwise, acquires no property in the grain itself, for he stands in the shoes of the lessor, and his rights and remedies are the same.

But even admitting this view to be incorrect, I am of opinion the defendant is liable in respect to the grain in question. In pursuance of the agreement between them, the claim of the defendant to the grain in the ground was withdrawn, and he afterwards purchased it; the manure and straw were delivered to and appropriated by him to his own use, and the agreement thus entirely executed by the parties. Under these circumstances, it would, it appears to me, be against all equity to permit the defendant to set up a title to the grain in Kimes, to defeat the plaintiff's claim in this action. The parties treated on the basis that the grain was in Rinehart and the manure in Olwine; and the former having enjoyed all the benefit of the manure and straw, in consideration of which he had agreed to treat the grain as Olwine's, and actually did so by becoming the purchaser at the sale, cannot now disaffirm the contract by insisting on an implied warranty of *title by Olwine.* Having acted on full information, at least with easy opportunity to inform himself, it is as if on a sufficient consideration he undertook to run the risk of Olwine's title, and it is now too late to object a title in Kimes.

Besides this, a party cannot affirm a bargain in part and disaffirm it in part. Before a contract can be rescinded, both parties must be placed in the same situation they were before the contract was made; and, *therefore,* when one has derived any benefit from the contract detrimental to the other party, he cannot rescind it, or treat it as wholly determined. Here, under the agreement with the plaintiff, the defendant received and appropriated the manure and straw, and it was part of the same agreement that, so far as he had an interest or should acquire one, the grain was to be considered as belonging to the plaintiff.

But it is objected against this, that the manure in fact was the property of Kimes, the purchaser at the sheriff's sale, and therefore the consideration of the defendant's agreement altogether, or in a great measure, failed. I am of opinion that manure in the barn-yard, made by the beasts of the tenant, and preserved by his

[Rinehart v. Olwine.]

labour and care, does not pass to a purchaser from the sheriff of the landlord's remainder.

The Judge thus answered the defendant's points:

1, 2, 3. " This action was instituted before the expiration of the credit which, by the terms of the sale, was to be allowed to the defendant. The plaintiff, therefore, cannot recover the price of the goods sold under the *indebitatus* count." But inasmuch as the defendant received and appropriated these goods, I see no objection against the jury assessing their value as the measure of the damages which the plaintiff is entitled to recover against the defendant for neglecting and refusing to give his note with surety, according to the conditions of sale. As such a recovery might be pleaded in bar of a subsequent action for goods sold and delivered, there is nothing in the idea suggested, that if this be permitted there might be a double recovery of the value of the chattels sold.

The 4th, 5th, 6th, 8th and 10th points have been sufficiently answered.

7. Supposing the allegation of consideration referred to in this point to be material, there is proof in this cause for the jury of a delivery of the grain. For certain purposes, grain growing is considered a personal chattel, of which possession may be given. Here the defendant took actual possession of the soil on which it was growing.

9. There is nothing in the case tending to show that the plaintiff waived the undertaking of the defendant to give a note. Certainly the delivery of the things sold did not amount to a waiver, in the absence of any intention to that effect.

Errors assigned:

1. The court erred in charging the jury that the action could be sustained before the credit for which the goods were sold had expired.

2. In charging the jury that they might assume the value of the goods received and appropriated by defendant, as the measure of damages which the plaintiff is entitled to recover against the defendant for neglecting and refusing to give his note with security.

3. In charging that under a contract of rent by which the landlord is to receive a portion of the grain raised in the bushel, the landlord acquires no property in the grain sown.

4. In charging that the defendant could not set up a title to the grain in Kimes, to defeat the plaintiff's claim.

5. In charging that manure in the barn-yard, made by the beasts of the tenant, does not pass to a purchaser from the sheriff of the landlord's remainder.

6. In their answers to the defendant's 6th, 7th and 9th points.

*Pennypacker*, for plaintiff in error, cited *Girard* v. *Taggart*, (5 *Serg. & Rawle* 19); *Mussen* v. *Price*, (4 *East* 147); *Dutton* v. *Solomonson*, (3 *Bos. & Pul.* 582); 6 *Wend.* 77; 6 *Pick.* 265; *Lewis* v.

[Rinehart v. Olwine.]

*Culbertson*, (11 *Serg. & Rawle* 49) ; *Wilkins* v. *Vashbinder*, (7 *Watts* 379) ; *Stambaugh* v. *Yeates*, (2 *Rawle* 161) ; 15 *Wend*. 169 ; 21 *Pick*. 367 ; 3 *N. Hamp*. 503.

*Darlington*, contra, referred to *Johnston* v. *Smith*, (3 *P. R*. 501) ; *Iddings* v. *Nagle*, (2 *Watts & Serg*. 22) ; *Matthews on Exrs*. 27 ; *Ram on Assets* 183 ; 16 *East* 116 ; 6 *Car. & Payne* 616 ; *Craig* v. *Dale*, (1 *Watts & Serg*. 509) ; *Paley on Agency* 328 ; *Girard* v. *Taggart*, (5 *Serg. & Rawle* 543).

The opinion of the Court was delivered by

ROGERS, J.—This was an action of *assumpsit* to recover damages for breach of a contract for a sale of certain goods and some wheat growing in the ground. The declaration contains a special count as well as the common counts. Judgment was rendered on the special count.

John Olwine was the owner of a tract of land in Chester county, which he leased to his son William L. Olwine, the latter rendering as rent one half the grain raised on the premises, to be delivered in the bushel. During the existence of the lease and before any grain was grown or deliverable, the premises were sold by the sheriff by virtue of an execution against the lessor. The property was purchased for John Kimes by his son-in-law and agent, Charles Rinehart, the defendant. Afterwards, William L. Olwine, the plaintiff, sold the articles in question, including the field of wheat in the ground, and the defendant became the purchaser at a credit of nine months, he, the purchaser, agreeing to give his note with approved security. Part of the property was delivered to the purchaser at or about the time of sale, and the field of wheat was afterwards measured, went into the possession of the defendant, and was reaped and enjoyed by him. The defendant, however, refused to give his note according to contract, and for this breach the suit was brought before the expiration of the nine months' credit.

On the day of sale a dispute arose between the plaintiff and defendant as to the title to the grain in the ground and the manure lying in heaps on the premises, and it was agreed that the defendant would relinquish all right to the grain, in consideration that the tenant would waive his right to the manure, and in the further consideration that he would leave certain straw, &c. All this was faithfully performed on the part of the plaintiff, and in all things the defendant reaped the fruits of the contract.

That the action can be sustained before the expiration of the credit for which the goods were sold, is ruled in *Girard* v. *Taggart*, (5 *Serg. & Rawle* 19, 543). In the same case it is decided, that the price of the goods is the measure of damages. The plaintiff has the right to be placed in the same situation he would have been in had the defendant complied with his contract. The rule,

[*Rinehart v. Olwine.*]

established in *Girard* v. *Taggart* has the recommendation, that it avoids the necessity of two actions, one for the breach of the contract, and the other for the price of the goods; for it seems to me that a recovery in the former would be pleadable in bar to an action to recover the price. Here I will remark, that there is nothing in the exception, that the value of the grain growing in the ground cannot be recovered in an action for goods sold and delivered. The point does not arise, as judgment is rendered on the special count only.

Then, as to the title of a tenant to the grain in the ground, where by the terms of the lease the landlord is entitled to a share of it, deliverable in the bushel. The better opinion seems to be, that it is the property of the tenant, and until the grain is severed and delivered to the landlord, he has no interest in the thing itself. If he sells it, it goes to his vendee, and the landlord cannot pursue it in his hands. The only remedy for the landlord is by distress, as in the case of a money rent. *Fry* v. *Jones*, (2 *Rawle* 11). It is said, that by delivery of part of the articles the plaintiff waived his right to demand the note. But he could not demand the note until the quantity of wheat was ascertained, which was not until after the sale; and that accounts for the delay, of which the defendant seeks to take advantage. Whether there was a waiver, is a question of intention, as appears by the case of *Lupin* v. *Marie*, (6 *Wend.* 80), and *Smith* v. *Dennie*, (6 *Pick.* 267). It would be a strained inference, to infer such an intention from the facts in this case, where the vendor acted in good faith by a full compliance with the contract on his part. The court was asked to charge the jury as a matter of law that there was a waiver, which they very properly refused to do. But the judgment was right on another ground; there was a compromise of a doubtful right; and without undertaking to decide the question, whether, where a farm is taken by a tenant for agricultural purposes, the *manure* made upon it belongs to the farm and not the tenant, yet we can safely say that a compromise made in respect to it is good, and cannot afterwards be gainsaid by the parties.

Judgment affirmed.