## Rudy v. Myton, Appellant (No. 1).

*Evidence—Witness—Competency of witness—Party dead—Act of June* 11, 1891, *P. L.* 287.

In an action by an administrator where the plaintiff has called a living and competent witness who has testified adversely to the interest of defendants with regard to a certain matter which is relevant and which had occurred before the death of the decedent, and in the presence and hearing of such witness, the surviving defendants are competent to testify with regard to that particular relevant matter.

*Evidence—Writing—Parol evidence.*

A paper should not be admitted in evidence where it does not show upon its face that it had any bearing upon the matter in controversy, and where there is no parol testimony to connect it with the matter in dispute.

*Evidence—Witness—Discrediting witness.*

Where the defendants have attempted to discredit a witness of the plaintiff by showing that his testimony upon the trial is different from that which he had given upon a former occasion, it is proper to permit plaintiffs to show what had been the entire testimony of the witness upon the former occasion with regard to the particular matter as to which the alleged discrepancy in his testimony arose:

*Practice, C. P.—Trial—Points.*

The refusal of a point containing two distinct propositions is not reversible error.

Argued Nov. 6, 1901.    Appeal, No. 234, Oct. T., 1900, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1899, No. 10, on verdict for plaintiff, in case of Henry Rudy, Administrator of Margaret Rudy, Deceased, v. Benner R. Myton, Thomas F. Shipton, Mary P. Shipton and Thomas F. Shipton. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Trespass to recover damages resulting from the cutting off of a supply of water.    Before BAILEY, P. J.

From the record it appeared that the suit was originally begun by Margaret Rudy, and that after her death Henry Rudy, her administrator, had been substituted plaintiff.

At the trial it appeared that in 1871, Margaret Rudy tapped a standpipe on land which subsequently became the property

·of defendants, and inserted a lead pipe by which she drew water for her own use.　In 1880 the use of this water was interfered with, and in 1886 plaintiff at her own expense erected another standpipe.　In 1899, the defendants cut off the water flowing to Margaret Rudy's land.

When Thomas F. Shipton was on the stand, the following offer was made:

We offer to prove by the witness that at the time that Elmer Croyle, a witness for the plaintiff, testified that he and Mr. Rudy and Mr. Myton had a conversation which he overheard, in which they entered into an agreement that they were to put ·down these pipes and each one bear one third of the expense and one third of the renewals from that time on, that he was ·not there, and that there was no such conversation as far as he was concerned; for the purpose of contradicting Elmer Croyle.

· Mr. Brown: It is objected that the witness is one of the defendants in this case, the party plaintiff, Margaret Rudy, being dead, this witness is incompetent to testify in this issue as to anything occurring prior to her death.

The Court: Objection sustained.　Testimony excluded. Bill of exception sealed for defendant. [1]

When Matthew Rudy, a witness for the plaintiff, was on the stand, the following offer was made:

Mr. Waite: We propose to prove the signature of Thomas Shipton to a paper.

Mr. Waite: " Q. Mr. Rudy, are you acquainted with the handwriting of Thomas Shipton?　A. Yes, sir.　Q. Have you ·seen him write frequently?　A. Yes, sir.　Q. Have you seen him figuring?　A. Yes; I have seen him figuring.　Q. I show ·you a paper with the name of Shipton written on it?　(Paper handed witness.)　A. That is Mr. Shipton's handwriting; those are his figures.　Q. Are those his figures on the top of the paper?　A. Yes, sir.　Q. Who wrote the word ' Myton ' there? A. Mr. Shipton.　Q.· Whose handwriting is on the face of this paper, if you know?　A. Well, it looks a good little bit like my father's handwriting.　Q. Whose figuring is on the lower left-hand corner of the paper on which the writing is made? A. Which, this (indicating) ?　Q. Yes?　A. That is Mr. Shipton's there.　Q. The lower left-hand corner?　A. Yes, sir."

Mr. Waite: We offer this paper in evidence, for the purpose

of showing the expense incident to the erection of the new pipes testified to by the plaintiff's witnesses, in 1887, to show the division of the expense incurred, as it appears on the paper, equally between the three persons, as it appears in the figures of Thomas Shipton, one of the defendants in this case.

Mr. Woods: It is objected:

1. That there is nothing on the paper that shows for what purpose it was made.

2. The witness on the stand stated that the paper was in the handwriting of Henry Rudy and it appears to be simply a kind of account for some purpose, the paper not showing what.

3. There is no evidence offered that James Myton ever saw this paper or that it was ever presented to him.

4. That the paper is simply a declaration of Henry Rudy as to something that took place in the lifetime of James Myton.

5. That the paper in no way could affect the interest of Benner Myton, one of the defendants in this case, being the devisee of James Myton.

6. That the paper as far as James Myton is concerned or Benner R. Myton cannot be evidence in this case. They are alleging that one of these parties held the property that he owns under Mr. Frazier and Benner R. Myton holding his property under his father, whatever agreements made between them, if there were any such, were separate and distinct agreements, so far as any evidence in this case is concerned.

7. Any declarations or any conversations of Thomas Shipton with James Myton, he being dead, cannot affect the rights of Benner Myton, his devisee — any conversations with Henry Rudy, I mean.

The Court: Objection overruled. Paper received in evidence. Bill of exceptions sealed for defendants. Of course the indorsement in the handwriting of Mr. Rudy is not evidence. It should be erased. [2]

Paper marked "plaintiff's Exhibit I, G. E. S., May 16, 1900."
Read by Mr. Waite as follows:

December 10, 1887.

| | |
|---|---|
| To 5 days cutting and hauling pipes. | $ 6.25 |
| " 20 pipes at 50 cts., | 10.00 |
| " 17 pipes at 30 cts., | 6.00 |

| | | |
|---|---|---|
| To 8 days' digging and laying pipes, | | 10.00 |
| " 2 days' digging, | | 2.50 |
| " 1 day's digging, | | 1.25 |
| " 68 rings, | | 8.50 |
| " Hauling pipes logs, | | 10.00 |
| " 58 meals, | | 9.66 |

3 ) 58

" 19⅓

" 35.49        35.49

" 27.90        2.75

" 7.59 Myton, 32.74 Shipton

" Myton's balance 7.59.

Matthew Rudy recalled on behalf of plaintiff.

Direct examination.

Mr. Waite: "Q. At the top of the page on this sheet of paper I showed you is written, 'Myton's balance, $7.59.' Whose writing is that? A. Thomas Shipton's."

Mr. Brown: I propose to read from the testimony of Elmer Croyle, given on the trial in the equity case, which is not yet disposed of, certain testimony that bears on the question relating to the matters that Mr. Woods offered in evidence, as tending to explain and qualify his answer in that former cross-examination.

Mr. Woods: It is objected that Elmer Croyle is a living witness and was put upon the stand and examined. His attention was called to answers that he made on the former trial of this case between the same parties, in equity, where he testified. He emphatically denied ever having made such answers. The defendant having read his answer on the former trial, as it related to what he denied on the stand to the jury, Elmer Croyle could not be called back now to corroborate his statements, and if he could not be called back to corroborate his statements, they could not offer any testimony that was taken on the former trial to corroborate anything that he denied at that time.

The Court: Objection overruled. Evidence received. Bill of exceptions sealed for defendants. [4]

The defendants' points were as follows:

3. That if the jury should find that James Myton, Thomas

Shipton and Henry Rudy had an agreement by which Henry Rudy could take any portion of the water flowing down said pipes, that it was a mere license or permission granted to Henry Rudy. *Answer:* The point is not affirmed as stated. If you find that Henry Rudy was acting as the agent for his wife, then the permission must be considered as granted to his wife and not to him individually. [6]

4. That it is essential to an easement that there should be both a dominant and servient estate, and as there was no evidence of Henry Rudy being the owner of any tenement to which the land of Benner R. Myton was made servient any agreement, if the jury should find there was any with Henry Rudy was a personal license or privilege to Henry Rudy. *Answer:* Refused. [7]

7. That there is no evidence produced by the plaintiff that Benner R. Myton or his predecessors in title had any agreement with Margaret Rudy giving her a right to take any portion of the water flowing down said pipes. *Answer:* Refused, if you believe from the evidence that Henry Rudy was acting on behalf of and as the agent of his wife, Margaret Rudy. [8]

11. That the interest of Mary P. Shipton in the water flowing from said spring being but an easement to take one fourth thereof through pipes laid over or through lands of the said Benner R. Myton neither she nor any of the predecessors could grant the plaintiff any right or use to be exercised therein. That as to Mary P. Shipton, the use of any part of said water was a mere permission to use, revocable at pleasure, and having given notice of the revocation of her permission, Thomas F. Shipton committed no trespass when he went to the stand pipe and took only the share of the water to which she was entitled under her deed. *Answer:* Refused. [9]

Verdict and judgment for plaintiff for $28.42. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions. (6–9) Above instructions, quoting them.

*James S. Woods* and *W. H. Woods,* with them *T. W. Myton,* for appellant.—A party is a competent witness to testify to a transaction which a witness for the opposite party had described

as occurring in the presence of the witness, the party and the decedent: Dumbach v. Bishop, 183 Pa. 602; Kauss v. Rohner, 172 Pa. 481; Brumbach v. Johnson, 187 Pa. 603; Hooven Mercantile Co. v. Evans Mining Co., 193 Pa. 37.

A mutilated piece of paper which appears to have been torn out of a book in which neither the name of the plaintiff nor defendant appears, which contains no charges against the defendant and which is unintelligible without an explanation by the plaintiff is not admissible in evidence as a book of original entries: Hough v. Doyle, 4 Rawle, 290; Carroll v. School, 2 Phila. 260; Thompson v. McKelvey, 13 S. & R. 126.

The statements by a witness at another time, though admissible to contradict him are not equally so to confirm him: Craig v. Craig, 5 Rawle, 91; Mowday v. Moore, 133 Pa. 598.

*H. H. Waite,* for appellee, filed no printed brief.

OPINION BY W. D. PORTER, J., February 14, 1902:

The plaintiff had called a living and competent witness who had testified adversely to the interest of defendants with regard to a certain matter which was relevant and which had occurred before the death of Margaret Rudy, the plaintiff, and in the presence and hearing of such witness. The effect of this was to render the surviving defendants competent to testify with regard to that particular relevant matter, all the elements essential to bring the case within the operation of the Act of June 11, 1891, P. L. 287, being present: Roth's Estate, 150 Pa. 261; Krumrine v. Grenoble, 165 Pa. 98; Brumbach v. Johnson, 187 Pa. 602; Robbins v. Farwell, 193 Pa. 37; Proper v. Campbell, 15 Pa. Superior Ct. 153. There was error in the rejection of the testimony of Thomas K. Shipton as to the agreement, with regard to which the witness, Elmer Coyle had testified, and the first specification of error is sustained. The offer of evidence, the rejection of which is the foundation of the second assignment of error, was to prove an immaterial fact, and the specification is not worthy of consideration.

The paper, the admission of which in evidence is the subject of the third assignment of error, was certainly not admissible for the purpose for which it was offered, " to show the division of the expense incurred, as it appears on the paper, equally be-

tween the three persons." The paper does not show that the expense was equally divided between the three persons, nor does it show that either Margaret Rudy or Henry Rudy had any interest in the matters of account to which it related. It contains no charge or assertion of claim against either of said parties nor does it indicate that they were entitled to any credit. There was nothing from which the jury ought to have been permitted to draw the inference that the plaintiff had any interest in the matters to which this paper related. There was no evidence as to the date at which the writing upon the paper was done. The paper was not admissible as an account stated between the parties, for it did not even purport to be such. There was no evidence that Shipton had ever delivered this paper to any person so as to make it admissible as a declaration against interest upon his part. This loose scrap of paper could not be treated as a book of original entry: Hough v. Doyle, 4 Rawle, 290; Thompson v. McKelvey, 13 S. & R. 126; Wissahickon Mutual Fire Insurance Company v. Wannemacher, 15 Superior Ct. 580. The paper did not show upon its face that it had any bearing upon the matter in controversy, nor was there parol testimony to connect it with the matter in dispute. The third assignment of error is sustained.

The defendants having attempted to discredit a witness of the plaintiff by showing that his testimony upon this trial was different from that which he had given upon a former occasion, it was proper to permit the plaintiffs to show what had been the entire testimony of said witness upon the former occasion, with regard to the particular matter as to which the alleged discrepancy in his testimony arose. The effect of a witness's testimony is to be gathered from all that he says, and it would be unjust to subject a witness to suspicion by showing a part of what he had said on a former occasion and excluding the explanation which he then gave. The fourth assignment of error is dismissed.

We cannot say, in view of the relationship of the parties and of the facts with which they were acquainted as to the ownership of the various tracts of land, that there was no evidence from which the jury ought to have been permitted to find that it was understood between them that Henry Rudy was acting for Margaret Rudy in the negotiations which resulted in the

reconstruction of the pipe line. The fact was fairly open to doubt, but it was still for the jury. The fifth, sixth, seventh and eighth assignments of error are dismissed. Plaintiff's eleventh point contained two distinct propositions and its refusal was not reversible error.

The judgment is reversed and a venire facias de novo awarded.