# Schweitzer *v.* Williams, Appellant.

*Evidence—Practice, C. P.—Trial—Province of court and jury.*

1. Where there is any evidence which alone would justify an inference of a disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. A court may set aside a verdict as against the weight of the evidence, but that is the most they can do to assist the party. But in a case in which a court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it. Whenever this is so they have the right, and it is their duty to withhold it from the jury.

*Practice, C. P.—Trial—Points.*

2. A point should contain but a single legal proposition, and be so constructed that the trial court can answer it by a single affirmation or negation. If it is not so constructed, its refusal is not reversible error.

*Landlord and tenant—Lease of farm—Increase of live stock.*

3. In the absence of stipulations to the contrary in the lease of a farm, the annual increase of stock leased with the farm accrues to the tenant; but where the lease is not for a money rent, but for a certain quantum of the product of the farm, the tenant is only entitled to his quantum of the progeny of the live stock born during the tenancy.

*Evidence—Title—Assessment—Payment of taxes.*

4. Assessments and the payment of taxes, although not evidence of title, may be shown as evidence more or less efficient as to the question of the claim of possession of the party against whom the assessments have been made, and by whom the taxes have been paid.

*Interpleader—Sheriff's interpleader—Form of verdict—Practice, C. P.*

5. On the trial of a feigned issue under the interpleader act to de-

termine the ownership of personal property on a farm, a verdict "for plaintiff for possession of all property in appraisement," although informal is not insensible and null where the jury has been properly instructed as to the questions at issue. The words "possession of" may be treated as superfluous, and the appellate court will treat the verdict as if it had been molded into proper form in the court below.

*Trial—Practice, C. P.—Instructions—Interpleader.*

6. Where on the trial of a sheriff's interpleader it appeared that the issue involved about thirty different articles, the ownership of which was derived from various sources, and the trial judge summarizes the testimony pro and con as to most of the articles specifically, he cannot be charged with reversible error in omitting to make reference to a particular article where counsel makes no specific request for instructions as to such article.

7. Where in such a case there is testimony that the plaintiff bought the property at a sheriff's sale and the crier of the sale testifies to this effect, the plaintiff's right to go to the jury is not defeated by the testimony of the prothonotary that there was no record of such a sale. There may have been a public sale, although the witnesses may have been mistaken in stating that it was a sheriff's sale.

8. Where in an interpleader the plaintiff alleges in his statement of claim ownership of a particular item of personal property, but there is no evidence to show his ownership of such particular item, it is reversible error for the court to submit to the jury the question of the ownership of the article.

*Evidence—Trial—Practice, C. P.*

9. Where a paper is offered in evidence accompanied by an offer to follow it by other proof, the judgment will not be reversed because the other proof has not been produced, if it appears that the mere admission of the paper did no harm. In such a case the opposite party cannot complain if he did not move to strike out the paper or ask the court to direct the jury to disregard it.

Argued Dec. 9, 1909.   Appeal, No. 169, Oct. T., 1909, by defendant, from judgment of C. P. Northampton Co., April T., 1909, No. 3, in case of Wallace v. Schweitzer v. Alice D. Williams.   Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Sheriff's interpleader to determine the ownership of personal property.   Before Stewart, J.

The facts appear by the opinion of the Superior Court. Plaintiff presented the following points:

3. If the jury find that Wallace Schweitzer was a tenant of Robert Schweitzer and had the lease of the farm, as well as some of the personal property belongong to Robert Schweitzer, the live stock which was the natural increase during the tenancy of Wallace Schweitzer belonged to Wallace Schweitzer. *Answer:* That point is affirmed, with the qualifications that I made, that if there was a lease of personal property, mere possession would not be enough. [4]

4. Tax assessments are not evidence of title and the jury must disregard the assessment books and what is contained therein as evidence of title to the goods and chattels mentioned in the assessment. *Answer:* That point is affirmed so far as it states the legal proposition. [5]

5. If the jury find that Wallace Schweitzer was a tenant for half, or on shares, he was entitled to one-half the hay and straw as well as of the crop and the growing grain, in the absence of any terms of either a verbal or written lease to the contrary. *Answer:* That point is affirmed. [6]

7. That there is evidence of ownership and title in Wallace Schweitzer of the goods and chattels levied on as the property of Robert Schweitzer and claimed by Wallace V. Schweitzer. *Answer:* I affirm that point. There is evidence. [7]

The verdict was in the following form: "Jury find a verdict for plaintiff for possession of all property in appraisement." Judgment was entered upon the verdict. Defendant appealed.

*Errors assigned* among others were (4–7) above instructions, quoting them; (8) that the verdict was insensible and null; (9) that the court erred in omitting to make any reference to the ownership of the stallion; (10) that the court erred in allowing the jury to find title for the stock by virtue of the sale, quoting a portion of the opinion; (11) that the court erred in declaring that

the assessment books were no evidence of title, quoting a portion of the opinion; (12) that the court erred in allowing the jury to find for the plaintiff for the personal property in the mill, quoting a portion of the opinion; and (13) admission of the check referred to in the opinion of the Superior Court.

*R. A. Stotz* and *W. E. Doster*, for appellant.

*Calvin Smith*, of *Smith, Paff & Laub*, and *Thos. D. Danner*, for appellee.

OPINION BY RICE, P. J., July 20, 1910:

This issue involved about thirty different articles of personal property. As to many of them the sufficiency of the evidence to sustain the verdict is not questioned. But it is claimed by appellant's counsel that there was no evidence to sustain a verdict in the plaintiff's favor as to any of the articles specified in the first and second assignments of error. This contention has required an examination of the large volume of evidence, and this we have made. If it were our province to determine whether the verdict of the jury is sustained by the preponderance of testimony we might be disposed to disagree with the jury as to some of the articles, although not as to all of them. But this is not our province in a case depending to such an extent as this does on oral testimony and a determination of the credibility of witnesses and the construction to be put on their language. The doctrine that wherever there is a scintilla of evidence of a material fact the question must be submitted to the jury, has not stood the test of experience and has accordingly been exploded in this country and in England. "The more reasonable statement of the rule is, that where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. A court may set aside a verdict as against the weight of the evidence, but that is the most

they can do to assist the party. But in a case in which a court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it. Wherever this is so they have the right, and it is their duty to withhold it from the jury:" Howard Express Co. v. Wile, 64 Pa. 201. This doctrine as to the province of the court and jury has been followed, with rare exceptions, down to the present time, and we need not go outside the foregoing statement of it to ascertain the rule by which an appellate court should be guided in investigating such a controversy as is raised by the first and second assignments of error. Having this principle in view, it is impossible to declare that there was no evidence from which a jury could legitimately find in favor of the plaintiff's claim to any of these articles.

In his general charge the learned judge instructed the jury that the burden of proof was on the plaintiff, and that "if the scale was even, just as much evidence on one side as the other, then the plaintiff would fail." He affirmed the principle also in his answer to the defendant's third point (the whole answer should have been printed in the assignment: rule XV), but correctly refused to charge that if the jury were in doubt as to the ownership of any of the articles in controversy their verdict must be for the defendant for such articles. Even if a plausible argument could be made, that as to some of the articles plaintiff, by reason of the confidential relation of father and son, was held to a higher degree of proof than is required in ordinary cases, the point was too broad in requiring the proof to remove all doubt. Moreover, the point was so worded as to make it apply to all of the articles in controversy, and, for that reason, if for no other, was properly refused. We remark in this connection, and the remark applies as well to the first and second assignments, that a point should contain but a single legal proposition and be so constructed that the trial court can answer it by a single affirmation or negation: Seifred v. Penna. R. R. Co., 206 Pa. 399; Rudy

v. Myton, 19 Pa. Superior Ct. 312.   Neither of the points embraced in these three assignments could have been affirmed as a whole without qualification; hence the refusal of them was not reversible error.

Plaintiff requested the court to charge that, if the jury found that he was a tenant of Robert Schweitzer and had a lease of the farm as well as some of the personal property belonging to Robert, the live stock which was the natural increase during the tenancy of the plaintiff belonged to him.   The court affirmed the point, with the qualification that there must be a lease of personal property and that mere possession would not be enough, as stated in the general charge.   The court had there instructed the jury quite fully upon this subject, and explicitly pointed out to them the distinction between a case where animals are leased with a farm for a definite period and a case where the owner merely allows the other to use them, but still retaining the ownership.   "The general rule is that in the absence of stipulations to the contrary the annual increase of stock leased with a farm accrues to the tenant:" 24 Cyclopedia of Law and Procedure, 1066.   See, also, Jackson and Gross on Landlord and Tenant, 28; 2 Am. & Eng. Ency. of Law (2d ed.), 349; 2 Kent's Com. 360. Reading the answer to the point in connection with the instructions in the general charge, to which the jury's attention was called in the answer, we think there was no error in the statement of the legal principle.   The difficult question is, whether it was applicable to the facts of the case.   The learned counsel for the appellant make a very vigorous argument in support of the proposition that there was no sufficient evidence of leasing, either of the farm or of the live stock upon the farm, and that at the best the plaintiff was merely a cropper.   We have been much impressed by their argument upon this branch of the case, but are not convinced that it ought to prevail.   There was some evidence, consisting of declarations of Robert Schweitzer while the plaintiff was in the occupancy of the premises and of the conduct of the parties during that time, tend-

ing to show that the plaintiff was there as a tenant, and, while the weight of the evidence may have been the other way, that would not be sufficient to warrant us in declaring that that question ought not to have been submitted to the jury. But upon what terms was he a tenant? In Pennsylvania, leases of farms are often made where the rent reserved consists of a certain quantum of the product of the farm: Rinehart v. Olwine, 5 W. & S. 157; Ream v. Harnish, 45 Pa. 376. And where a furnished house or stocked farm is leased, which are common cases, the personal property is really a part of the consideration of the rent, and hence in such cases it is proper to say that the rent issues out of lands and tenements corporeal, and also out of them and their stock or furniture: Mickle v. Miles, 31 Pa. 20. If the rent reserved be a money rent the progeny of the stock born during the term would, according to the general rule above stated, belong to the tenant. But here, if there was a tenancy at all it contemplated an equal division of the grain and other products raised on the farm. This was what the plaintiff offered to show by the admissions of Robert Schweitzer to Lewis W. Clauss and other witnesses, and the testimony adduced under this offer went no farther. In order that there may be no misunderstanding about this we quote the offer: "We propose to show by the witness that he had a conversation with Robert T. Schweitzer, in the course of which Robert Schweitzer admitted that Wallace Schweitzer was the tenant farmer and was farming for shares, and that there was to be an equal division of the grain and other products raised on the farm." According to the testimony of this witness, Robert said, "that Wallace was farming for the half." And again, "Well, he said he moved there for the half." The testimony of James E. Rohrbach was to the same effect. Of course, if the point referred simply to the stock which Wallace brought to the farm or which belonged absolutely to him it would have been well taken. But evidently it was not intended to be confined to such stock, but to apply as well to stock belonging absolutely

to his father; and it is to be noticed that the father continued to live upon the premises during the plaintiff's occupancy. Assuming that there was to be an equal division of the grain and other products raised on the farm, and assuming also that Robert's live stock upon the farm was leased with it, it is impossible to see how it could be declared as matter of law that all the progeny of such stock, born during the tenancy, belonged absolutely to the tenant, as the court was requested to charge in the point. We are of opinion that the point should have been refused, and that the instructions upon the subject given in the general charge did not cure the error.

The question of the correctness of the answer to the plaintiff's fifth point (sixth assignment) likewise depends for its determination upon the question whether the plaintiff was a tenant, and, for the reason stated, we are not prepared to say that the court erred in submitting the latter question to the jury.

The fifth and eleventh assignments may be considered together, as they relate to the same subject, namely, tax assessments as evidence of title. The question is not whether they were admissible in evidence, but what effect was to be given to the evidence. The point embraced in the fifth assignment was unhappily worded, and if it had been affirmed without qualification it would have tended to mislead the jury into a rejection from consideration of the assessment books. It is to be observed, however, that the point was not affirmed without qualification, and the answer was not such as to overturn what the learned judge had said in that portion of his general charge quoted in the eleventh assignment of error. The instructions last referred to were in substance a statement of the rule as laid down in Irwin v. Patchen, 164 Pa. 51, where it was said: "Of course such testimony cannot prove title, but they are some evidence of claim, and are more or less efficient as a basis of inference, according as the opposing evidence of a similar character is weaker or stronger, and the other facts in the case are more or less consistent with

the claim made." In Hockenbury v. Snyder, 2 W. & S. 240, speaking of a claim under the statute of limitations, the court said: "The assessment is resorted to not as giving him a right but to show the extent of his claim and possession. . . . I apprehend then that, where paying taxes for a tract, or the whole tract, is spoken of, it has reference to the extent of the claim, and is referred to as evidence of that extent." The same idea was conveyed in Green v. Schrack, 16 Pa. Superior Ct. 26, where our Brother BEAVER said: "It has been uniformly held that assessments and the payment of taxes, although not evidence of title, may be shown as evidence more or less efficient as to the question of the claim of possession of the . party against whom the assessments have been made and by whom the taxes have been paid." Viewing the instructions upon this point, as a whole, we see no reversible error.

The jury found "a verdict for plaintiff for possession of all property in appraisement." We cannot agree with appellant's counsel as set forth in their eight assignment, that the verdict is insensible and null. Construed in the light of the charge of the court, which presumably the jury intended to obey, the verdict was for the plaintiff for the goods described, and the words "possession of" may be treated as superfluous: Cavene v. M'Michael, 8 S. & R. 441; Fisher v. Kean, 1 Watts, 259. The intention of the jury is plain and, while the verdict is informal, it could have been molded into form in the court below and may be treated as amended in this court: Friedly v. Scheetz, 9 S. & R. 156.

Complaint is made in the ninth assignment of error that the court erred in its charge in omitting to make any reference to the plaintiff's claim that the stallion was a gift and to the want of any testimony to support a gift. It should be noticed that the defendant's counsel made no specific request for instruction to that effect. As already stated, the issue involved about thirty different articles. The evidence relating to the ownership of these

articles was of various kinds.  His title was claimed to
be derived from various sources.  As the learned judge
said, it was like trying many different suits in one.  He
summarized the testimony pro and con as to most of the
articles specifically, and with painstaking care called the
jury's attention to the respective contentions of the par-
ties.  In view of the nature of the issue and the elaborate
and impartial manner in which the evidence was reviewed
in the judge's charge, the complaint that he did not refer
in as much detail to the evidence concerning each of these
articles as counsel now think should have been done ought
not to be sustained.  The minuteness with which the trial
judge should discuss the evidence and the inferences there-
from depends upon the circumstances of the case, and
much must be left to his sound discretion.  Frequently
the course taken by counsel in arguing to the jury may
properly influence him in determining this matter as well
as others: Borham v. Davis, 146 Pa. 72; McCord v. Whit-
acre, 8 Pa. Superior Ct. 277.  This assignment is not sus-
tained.

It is alleged argumentatively in the tenth assignment
of error that the court erred in allowing the jury to find
title to the stock by virtue of a sale.  The question arises
in this way: Two witnesses called by the plaintiff testified
that they were present at a sheriff's sale of the stock upon
the premises of Robert Schweitzer, at which the plaintiff
became the purchaser, which sale took place some fifteen
years before the trial.  One of these witnesses testified
that he was the cryer of the sale.  No objection was made
to this manner of proving the sale.  But in defense the
defendant introduced the testimony of the prothonotary
that no record of a sheriff's sale of Robert Schweitzer's
property at that time could be found.  Be it so, the court
held that this did not absolutely nullify the entire testi-
mony of these witnesses that this property was bought
by the plaintiff at a public sale of the property on the
premises of Robert Schweitzer.  In this we think the
court was right.  The witnesses may have been mistaken

as to its being a sheriff's sale, and yet may have testified truly as to the main fact. Their testimony was consistent with the testimony of other witnesses as to the declarations of Robert Schweitzer subsequent to that time, to the effect that the plaintiff was the owner of the stock. We think the question was for the jury and was submitted in a proper manner.

The twelfth assignment alleges error in permitting the jury to find in favor of the plaintiff for the item described in the appraisement as "one-half interest in personal property in grist mill," valued at $25.00. The instructions quoted in this assignment show that the learned court had difficulty in pointing to the testimony which would support the plaintiff's claim to this property. It is alleged in the statement of claim that this property "was acquired by the plaintiff paying for same by payment of his earnings for the said personalty." We do not find that this allegation of the statement of claim is sustained by the testimony. But in their argument upon this assignment it is urged that it was sold to the plaintiff at the public sale above referred to. We have examined the testimony of the witnesses by whom that sale was proved, and are unable to find therefrom any evidence that would affirmatively show that the property in the grist mill was bought by the plaintiff. It may have been, but the evidence fails to show the fact. These witnesses speak of farm stock, horses, farm implements, cows, pigs, and wagons as having been sold, but so far as identifying any personal property in the mill as having passed at that sale their testimony is wholly lacking. We conclude, therefore, that there was error in submitting the question to the jury.

The court committed no error in admitting in evidence the check referred to in the thirteenth assignment of error, the offer being accompanied by an offer to follow it by proof that it was given in payment of the stock purchased by the plaintiff at the public sale of Robert Schweitzer's property. If it was not followed by such proof the admission of the check did no harm, and, at any rate, the

appellant cannot complain since she did not move to strike out the evidence or ask the court to direct the jury to disregard it.

This case was in the main well tried, and it is unfortunate that this unhappy family controversy cannot be ended here. But the conclusion that there was reversible error in the fourth and twelfth assignments is unavoidable. The other assignments are overruled.

Judgment reversed and venire facias de novo awarded.